AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Blue iPhone
Seizure No. 2024250100014401-0005
("Target Device")

Case No. **23mj4464-MSB**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841(a)(1) | Possession with Intent to Distribute |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Viktoriya Saldina*
Applicant's signature

Viktoriya Saldina, HSI Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: December 11, 2023

Judge's signature

City and state: San Diego, California

Hon. Michael S. Berg, United States Magistrate Judge
Printed name and title

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Blue iPhone
> Seizure No. 2024250100014401-0005
> (**"Target Device"**)

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

# ATTACHMENT B
## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 5, 2023 up to and including December 5, 2023:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl and methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violation of Title 21, United States Code, Sections 841 (a) (1).

# AFFIDAVIT

I, Special Agent Viktoriya Saldina, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Blue iPhone
>
> Seizure No. 2024250100014401-0005
>
> ("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically violation of Title 21, United States Code, Section 841 (a) (1) as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Albert RAMIREZ ("Defendant") for possessing with the intent to distribute 20.16 kilograms (44.44 lbs.) of Cocaine and 86.84 kilograms (191.44 lbs.) of Methamphetamine. The **Target Device** is currently in the custody of Homeland Security Investigations and located at 880 Front Street, Suite 3200, San Diego, California 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with Homeland Security Investigations (HSI) since November of 2022. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my

training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, Otay Mesa Port of Entry, and Tecate Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data,

remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

   a. tending to indicate efforts to import controlled substances from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On December 5, 2023, at approximately 1149 hours PST, a 2009 Honda CRV entered the United States from Mexico at the San Ysidro Port of Entry through vehicle lane number 14. The driver and sole occupant of the vehicle was AA. A Customs and Border Patrol (CBP) Officer obtained a negative declaration from AA, who stated she was going to San Ysidro, California. The primary officer referred the Honda CRV and AA to secondary inspection following an alert by a K9 during pre-primary inspection.

8. During secondary inspection, a CBP Officer scanned the Honda CRV with a Z-Portal x-ray machine. The CBP Officer observed anomalies within the spare tire,

bumper, and quarter panels of the Honda CRV. Based on the CBP Officer's training and experience, including having found packages similarly concealed in vehicles many times in the past which proved to contain drugs, the CBPO Officer believed the packages contained prohibited drugs.

9. To facilitate further investigation, the packages were left in place and were not opened or inspected. Investigators decided to try to follow the Honda CRV to its intended destination. Because of the exigencies of the situation and to avoid a longer delay which might cause the driver or any co-conspirators to suspect or detect that the packages had been discovered by law enforcement, investigators installed a GPS tracking device on Honda CRV at approximately 11:58 hours PST, so Honda CRV and the driver could leave the POE and continue to their intended destination. The GPS tracker was not turned on until agents obtained a warrant authorizing its use (case number 23MC2083). In the meantime, agents followed the Honda CRV at a distance.

10. AA drove the Honda CRV to a parking lot in the Fashion Valley mall located at 7007 Friars Road, San Diego, CA, 92108. AA departed the vehicle on foot and entered the mall.

11. At approximately 2:36 PM, agents observed an unidentified Hispanic male, later identified as Albert RAMIREZ (RAMIREZ) walk over to Honda CRV, enter, and drive away in the vehicle. Agents maintained surveillance on Honda CRV as it traveled through San Diego County. The Honda CRV arrived at a residence in Chula Vista, California, where agents observed RAMIREZ interacting with an unidentified individual in a Silver Jeep Wrangler.

12. Based on their training and experience, agents are familiar with narcotics trafficking operations wherein one individual drives a vehicle containing narcotics across the border and to a pre-identified location where they leave the vehicle. A second individual will then drive the vehicle away, unload the narcotics, and then return the vehicle to the location the original driver left it.

13. At approximately 3:50 PM, agents approached the Honda CRV and Jeep Wrangler, and placed RAMIREZ under arrest. A.C., the driver of the Jeep, consented to an inspection of Jeep Wrangler, which resulted in the discovery of 16 packages weighing 20.16 kilograms in the rear cargo area. A test of the substance in the packages field tested positive for the properties of cocaine. An additional 80 packages weighing 38.04 kilograms were discovered in the spare tire of Jeep Wrangler. A test of the substance contained in the packages field tested positive for the properties of methamphetamine. A.C., the driver of the Jeep Wrangler, was later identified as RAMIREZ's girlfriend. The Jeep was later determined to be registered to RAMIREZ.

14. RAMIREZ, the Honda CRV, and all of the narcotics were transported back to the San Ysidro Port of Entry (POE). Upon further inspection of the target vehicle, CBP Officers discovered 25 packages concealed in the quarter panels, 45 packages in the spare tire, and 17 packages in the rear bumper, 25 packages in the rear right quarter panel, and 13 packages in the rear left quarter panel, together weighing 86.84 kilograms. A field test of the substance in the packages field tested positive for the properties of Methamphetamine.

15. During a post-Miranda interview, RAMIREZ stated that on December 5, 2023, at approximately 09:00 hours PST, he received a call from a Mexican phone number about picking up a drug-laden vehicle (a black truck) in a parking lot of the Grossmont shopping mall. RAMIREZ admitted to driving the drug laden vehicle from Grossmont to Spring Valley where he removed the drugs and placed them into the Jeep Wrangler. RAMIREZ stated he was getting paid $1,200 for picking up the vehicle from the parking lot and removing the narcotics from it. RAMIREZ stated the Honda CRV was the second "job" that day and admitted to having knowledge of the narcotics inside.

16. RAMIREZ was arrested and charged with a violation of Title 21, United States Code, 841(a)(1), possession with intent to distribute.

17. The **Target Device** was found and seized by Homeland Security Investigators

(HSI). HSI agents found the **Target Device** in the passenger seat of the Honda CRV driven by RAMIREZ. RAMIREZ told the HSI agents that the phone belonged to him and was the same one he used to communicate about transporting narcotics.

18.     Based upon my training and experience, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Device** to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics.

19.     Based upon my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on November 5, 2023 up to and including December 5, 2023.

## METHODOLOGY

20.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary

word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

23. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

24. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of Defendant's violation of Title 21, United States Code, Section 841 (a) (1). Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Viktoriya Saldina*
Special Agent Viktoriya Saldina
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 11th day of December 2023.

Hon. Michael S. Berg
United States Magistrate Judge